UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALLAN DOBYNS, et al.,

        Plaintiffs,

  v.

GARY TRAUTER, et al.,

        Defendants.

CASE NO. C08-44JLR

ORDER

This matter comes before the court on Defendants Gary and Deborah Trauter and Fletcher and Debra Vinson's ("Trauter Defendants") motion to dismiss all claims on multiple grounds (Dkt. # 9) and Defendants Multiple Services Corporation ("MSC") and Steven F. Stucker's ("MSC Defendants") motion to dismiss for failure to state a claim for civil conspiracy (Dkt. # 13). Having reviewed the papers filed in support of and in opposition to the motions as well as having heard the argument of counsel on the securities claim, the court finds that the assignment of Mr. Pelfrey's 10b-5 claim to Mr. Dobyns is not sufficient to allow Mr. Dobyns to bring a 10b-5 claim against the Trauter Defendants; dismisses the 10b-5 claim against the Trauter Defendants because Mr. Dobyns lacks standing to assert it; declines to exercise supplemental jurisdiction over the remaining state law claims; dismisses the state law claims against the Trauter and MSC

ORDER – 1

Defendants without prejudice; and strikes as moot the MSC Defendants' motion to dismiss (Dkt. # 13).

## I.  BACKGROUND

In October 2003, the shareholders of Knights Insulation ("Knights"), Allan Dobyns, Brian Pelfrey[1], John Schaub, Gary Trauter and Fletcher Vinson, entered into a Buy-Sell Agreement "Relating to the Purchase and Sale of Stock in the Event of Certain Circumstances." (Compl. (Dkt. # 1) at Ex. 1.)  Mr. Dobyns was Knights' sales manager as well as a corporate officer and director.  (Compl. at ¶¶ 3.6-3.7.)  Mr. Dobyns alleges that on February 27, 2006 he was constructively terminated from his positions and forced to resign due to breaches of fiduciary duties and shareholder oppression committed by the Defendants.[2]  (Compl. at ¶ 3.7.)

In late-February 2006, Knights provided notice to Mr. Trauter and Mr. Vinson of their right to elect to purchase Mr. Dobyns' shares.  (Compl. at ¶ 3.13.)  Plaintiffs allege that Mr. Dobyns was the owner of 40% of the shares of Knights.  (Compl. at ¶ 3.4.)  Mr. Trauter and Mr. Vinson signed agreements dated February 2006 to each purchase 408 of Mr. Dobyns' shares (representing all of Mr. Dobyns' shares in Knights) at the fair market value of such shares under the terms of the Buy-Sell Agreement between the parties.  (Compl. at ¶ 3.14; *see also*, Compl. at Exs. 2-3.)  These agreements, each entitled "Notice to Owners of Knights Insulation, Inc.," also state that:  "The Board of Directors has agreed to retain the services of an independent company to determine the fair market

---

[1] Mr. Pelfrey's name has also been spelled as "Pelfry" by Plaintiffs. The court adopts the spelling used in the Buy-Sell Agreement appended to the complaint.

[2] Plaintiffs refer simply to "Defendants" in some sections of their complaint making it hard to discern to which defendants they are referring. In their response to the MSC Defendants' motion to dismiss they make clear that they are alleging only a civil conspiracy claim against the MSC Defendants.

ORDER – 2

value of Knights Insulation, Inc. and Mr. Dobyns' ownership interest."  (Compl. at Exs. 2-3.)

On December 6, 2006, Mr. Trauter and Mr. Vinson sent a letter to Mr. Dobyns enclosing an appraisal of Mr. Dobyns' shares and a check.  (Compl. at Ex. 5.)  Instead of accepting the check, Mr. Dobyns demanded arbitration to determine the fair market value of the shares.  (Compl. at ¶ 3.22.)  The arbitration award, issued on June 22, 2007, set the valuation date for the shares as December 31, 2006 and found that the fair market value of Mr. Dobyns' minority interest was $750,000.  (Compl. at Ex. 12.)  Mr. Trauter and Mr. Vinson have refused to pay this sum to Mr. Dobyns.  (Compl. at ¶ 3.32.)  Plaintiffs claim that Mr. Trauter and Mr. Vinson have breached several agreements in association with the purchase of Mr. Dobyns' shares.

Plaintiffs also claim that they have been damaged by Mr. Trauter and Mr. Vinson's failure to notify them of the purchase of shares from another shareholder, Mr. Pelfrey.  (Compl. at ¶ 4.1.)  When Mr. Pelfrey stopped working at Knights Mr. Dobyns advanced Mr. Pelfrey $20,000 and Mr. Pelfrey agreed that "any benefit to him arising out of his continued ownership of shares in Knights Insulation would belong to Allan Dobyns."  (Compl. at ¶ 5.1.)  The complaint does not specify the date on which this agreement was made.  On or about November 30, 2006, Mr. Trauter and Mr. Vinson contacted Mr. Pelfrey and offered to purchase his shares.  (Compl. at ¶ 5.2, Ex. 11.)  Plaintiffs claim that in so doing, Mr. Trauter and Mr. Vinson breached the Buy-Sell Agreement because they did not provide notice to Mr. Dobyns of the proposed transaction with Mr. Pelfrey.  (Compl. at ¶ 5.3.)  Plaintiffs allege that Mr. Trauter and Mr. Vinson did not provide Mr. Pelfrey with the appraisal.  (Compl. at ¶ 5.8.)  Mr. Pelfrey accepted Mr. Trauter and Mr. Vinson's offer.  (Compl. ¶ 5.10.)

ORDER – 3

Plaintiffs allege that the appraisal valued the shares[3] at $405 per share, a price that was almost twice the value Mr. Trauter and Mr. Vinson offered and paid to Mr. Pelfrey. (Compl. at ¶ 5.7.) Plaintiffs claim that Mr. Pelfrey was induced to sell his shares to Mr. Trauter and Mr. Vinson for substantially less than the true fair market value of the shares. (Compl. at ¶ 5.9.) On August 17, 2007, Mr. Pelfrey executed an assignment that purported to assign to Mr. Dobyns "all Pelfry's [sic] right title and interest in any and all claims, potential or otherwise, against Gary Trauter and Fletcher Vinson, of whatsoever nature and kind, relating to or arising out of Knights Insulation, Inc. and/or Pelfry's [sic] shares in Knights Insulation, Inc." (Compl. at Ex. 14.)

On January 11, 2008 Plaintiffs filed their complaint alleging six causes of action: (1) breach of fiduciary duty; (2) common law fraud; (3) violations of the anti-fraud provisions of the Securities Act of Washington; (4) a violation of § 10b of the Exchange Act of 1934 and Rule 10b-5; (5) breach of contract; and (6) civil conspiracy.

## II. ANALYSIS

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all well-pleaded facts as true and construe all allegations of material fact in a light most favorable to the non-moving party. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). While a complaint need not contain detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

---

[3] Plaintiffs refer to the shares generally, but it appears that the appraisal was of both the corporation as a whole and Mr. Dobyns' 40% interest in the corporation.

ORDER – 4

cause of action will not do. *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007). In the event dismissal is warranted, however, leave to amend should be granted unless amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

The Trauter Defendants argue that this case should never have been filed as an action grounded in securities fraud as the case is, at its core, a contract dispute. (Mot. (Dkt. # 9) at 1.) The court finds that the express assignment in this case of Mr. Pelfrey's securities claim to Mr. Dobyns is not proper and dismisses the 10b-5 claim because Mr. Dobyns lacks standing to bring that claim. The court declines to exercise supplemental jurisdiction over the remaining state claims and dismisses those claims against both the Trauter and MSC Defendants without prejudice.

**A.    Damages**

The Trauter Defendants first argue that Plaintiffs fail to plead an essential element of a 10b-5 claim, damages. They argue that the first agreement between Mr. Pelfrey and Mr. Dobyns made it impossible for Mr. Pelfrey to suffer any damage when he sold his shares. They claim that Mr. Pelfrey "having already assigned any benefit of 'his continued ownership of shares' to Dobyns, [] had nothing to lose (or gain). In short, no claim could have accrued to Pelfrey when Pelfrey sold his shares to Defendants, because a requisite element — damages to Pelfrey — is missing, and, thus, Pelfrey had no claim to assign to Plaintiffs." (Mot. at 9.)

At the motion to dismiss stage all allegations of material fact must be construed in a light most favorable to the non-moving party, here Plaintiffs. It is unclear from the pleadings and attached documents exactly what was contained in the first agreement between Mr. Pelfrey and Mr. Dobyns, when it was executed, how it was supposed to work and whether under that agreement it would have been impossible for Mr. Pelfrey to

ORDER – 5

sustain the damages alleged in paragraph 7.8 of the complaint.  Counsel for Plaintiffs offered his interpretation of the initial agreement between Mr. Pelfrey and Mr. Dobyns at oral argument but, in the court's view, that interpretation did nothing to clarify the contours of the agreement.  Viewing the allegations in a light most favorable to Plaintiffs, the court declines, at this stage of the proceedings, to dismiss the 10b-5 claim on this basis.

**B.    Purported Assignment**

The Trauter Defendants argue that Mr. Dobyns lacks standing to assert the Rule 10b-5 claim that allegedly arose out of the sale by Mr. Pelfrey of his shares to Mr. Trauter and Mr. Vinson.  (Mot. at 10.)  They argue that the express assignment should be rejected.  The court agrees and finds that this case is not one of the unique situations in which an express assignment of a 10b-5 claim should be recognized.

The Supreme Court's decision in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) provides guidance on standing in 10b-5 cases.  In *Blue Chip*, the Court adopted the *Birnbaum* Rule[4] which limits "the plaintiff class for purposes of a private damage action under §10(b) and Rule 10b-5 [] to actual purchasers and sellers of securities." 421 U.S. at 730.  The Court held that a party who abstained from purchasing a security because of a seller's misrepresentation could not bring a Rule 10b-5 claim.  *Id.* at 755.  The decision was premised on two policy considerations:  (1) the danger that an expansion of the potential class of plaintiffs would result in "vexatious" or "nuisance" or "strike" suits; and (2) the evidentiary problems created by allowing non-purchasers or non-sellers to bring a Rule 10b-5 action.  *See id.* at 740-43.

---

[4]This rule was established in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952).

ORDER – 6

It is clear in the Ninth Circuit as well as other circuits that securities claims are not automatically assignable. *See Smith v. Ayers*, 977 F.2d 946, 950 (5th Cir. 1992); *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1490 (9th Cir. 1985). What is less clear is whether a seller or purchaser can expressly assign his claims. Only two courts have held that Rule 10b-5 claims may be expressly assigned. *Farey-Jones v. Buckingham*, 132 F. Supp. 2d 92, 100-02 (E.D.N.Y. 2001); *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1371 (S.D. Fla. 1991). Additionally, several members of an en banc panel of the Third Circuit in dicta opined that express assignments are permissible. *Lowry v. Baltimore & Ohio R.R. Co.*, 707 F.2d 721 (3d Cir. 1983). Only one Circuit has held, under the circumstances presented in that case, that an express assignment did not confer standing. *Smith*, 977 F.2d at 950. The *Smith* court did however "reserve for another day whether under other circumstances, some Rule 10b-5 claims may be expressly assigned." *Id.* at 950-51. The *Farey-Jones, AmeriFirst* and *Smith* decisions each analyzed whether allowing the assignment under the particular facts of the case would cause the problems the Court sought to eliminate in *Blue Chip*.

**1.    Cases Allowing Assignment**

In *Farey-Jones,* the court was faced with a situation where a limited partnership assigned its 10b-5 claim to its general partner. 132 F. Supp. 2d at 101. The court found it significant that the limited partnership had only ever had one general and one limited partner and that by the time of the assignment the limited partner had sold his interest to the general partner. *Id.* The court found that "due to the unusual circumstances of the instant express assignment, there is no likelihood that the assignment would deprive the true seller of the securities, who allegedly suffered the fraud, of its cause of action and unduly benefit someone who had not been harmed. *Id.* (citation and internal quotation marks omitted). The court also found that allowing the general partner to assert the claim

ORDER – 7

would not encourage strike suits or make the suit a nuisance. *Id.* The court determined that the evidentiary concerns expressed in *Blue Chip* would not be an issue as the general partner spoke with the person who made the alleged misrepresentations and the general partner allegedly relied on those misrepresentations in making the decision to sell the securities at issue. *Id.* The court also noted that had the limited partnership brought the claim itself, the general partner would have been the person testifying on behalf of the general partnership. *Id.* at 102.

The other case allowing an assignment of a Rule 10b-5 claim, *AmeriFirst*, arose out of a settlement agreement concerning five separate class actions filed on behalf of AmeriFirst Bank's ("AmeriFirst") shareholders against AmeriFirst and several other defendants. 757 F. Supp. at 1369. The settlement agreement required AmeriFirst to bring suit against its officers, directors and outside accountants. *Id.* The agreement further provided that the class would assign AmeriFirst an undivided 20% interest in the securities claims it alleged in the class action after recovery of certain litigation expenses and excluding recovery from an insurance policy. *Id.* In exchange AmeriFirst was to assign the class an undivided 25% interest in its claims after recovery of specified amounts. *Id.* The settlement agreement was court approved. *Id.* Defendants argued that the court lacked jurisdiction because the claims were invalidly assigned. *Id.* The court found that the concerns expressed in *Blue Chip* were not present because allowing AmeriFirst to assert a portion of the class's claims did not make the suit a nuisance and class members who were allegedly defrauded could testify regarding the specific misrepresentation or omission that induced them to buy or sell their securities. *Id.* at 1372.

ORDER – 8

### 2. Case Denying Assignment

In *Smith* the Fifth Circuit affirmed the decision of the district court to dismiss for lack of standing a plaintiff asserting assigned 10b-5 claims. 977 F.2d at 947-48. In that case a former principal of a company sought to bring Rule 10b-5 claims that had been assigned to him by the company. *Id.* at 947. In dismissing the case the court found that the action would be used as a "weapon" and that the former principal's motivation behind the lawsuit was his "personal antagonisms." *Id.* at 950. Relying on those findings the Fifth Circuit held that the action bore all the hallmarks of a strike or nuisance suit. *Id.* The court also noted that the former principal faced "potentially insuperable evidentiary obstacles in proving the merits of his case" as the two majority shareholders in the company unequivocally denied the allegations forming the crux of his suit. *Id.* The court stated that the former principal would rely heavily on his own self-serving testimony and the action bore little chance of reasonable resolution by the pre-trial process. *Id.* The court held that as assignee, the plaintiff fell within the type of remote purchasers whose 10b-5 actions are discouraged by *Blue Chip*. *Id.*

### 3. Application of *Blue Chip, Farey-Jones, AmeriFirst and Smith*

Here, the Trauter Defendants claim that the two *Blue Chip* policy considerations, the danger of nuisance or strike suits and evidentiary problems are both present. They argue that this is the third lawsuit filed against them by Plaintiffs, that this lawsuit seeks nearly all the relief previously sought, and that Plaintiffs could not have filed the present lawsuit in federal court if they did not have the 10b-5 claim. (Mot. at 11.) Plaintiffs discuss at length the decisions in *Farey-Jones* and *AmeriFirst* arguing that 10b-5 claims are assignable but fail to address either of the two *Blue Chip* policy considerations that were at the heart of both of those decisions. At oral argument Plaintiffs' counsel followed a similar course.

ORDER – 9

It is clear from the letters and emails attached to the complaint that there is no love lost between the parties. (*See* Compl. at Exs. 4-7, 10.) The Trauter Defendants claim there have been two prior cases filed as a result of the disputes between the parties; however, the situation is not as dire as they make it sound. The first case was dismissed for lack of prosecution around the time the parties entered into arbitration and the second "lawsuit" was filed to confirm the decision that came out of that arbitration. (Resp. (Dkt. # 19) at 6 ; Declaration of Bradley G. Taylor ("Taylor Decl.") (Dkt. # 10) at Ex. E.) Plaintiffs in this third lawsuit seek to enforce the arbitration award as well as several alleged contracts between the parties. Defendants claim that Plaintiffs seek much of the same relief as they sought in prior lawsuits; however, the court would expect that if Plaintiffs' claims were barred by *res judicata*, Defendants would be asserting that doctrine here. Plaintiffs are correct in their assertion that this case would not be in federal court without the federal securities claim.

Although the court cannot find conclusively that the entire action is a nuisance or strike suit, it is however suspicious of the timing of the assignment that purportedly gives Mr. Dobyns standing to assert the 10b-5 claim. The assignment was not made until after the arbitration and Mr. Trauter and Mr. Vinson's refusal to pay the amount determined by the arbitrators. The circumstances suggest that Mr. Dobyns acquired the claim to put further pressure on the Trauter Defendants to pay what Plaintiffs believed that they were owed. The court, on this basis, is inclined to find that the 10b-5 claim was added to the larger lawsuit as a nuisance to the Trauter Defendants.

There are also evidentiary problems created by the assignment. In *Blue Chip*, the Court was concerned that if it expanded liability, such liability would turn on "'hazy' issues inviting self-serving testimony, strike suits, and protracted discovery, with little chance of reasonable resolution by pretrial process." *Virginia Bankshares, Inc. v.*

ORDER – 10

*Sandberg*, 501 U.S. 1083, 1105 (1991) (citing *Blue Chip*, 421 U.S. at 742-43).  The Trauter Defendants argue that if the complaint survives dismissal, Mr. Pelfrey's alleged reliance and purported lack of knowledge regarding the alleged nondisclosures will be critical issues on summary judgment but their available discovery tools will be limited by Mr. Pelfrey's non-party status.  (Mot. at 11.)

At oral argument counsel for Plaintiffs sought to downplay the importance of Mr. Pelfrey's testimony to the 10b-5 claim.  The court is not persuaded that Mr. Pelfrey is a minor player.  Mr. Pelfrey will be a key witness in determining whether a violation of the securities laws occurred because he allegedly sold his shares based on misrepresentations and/or omissions by certain of the Defendants.  Mr. Pelfrey's testimony regarding what information was or was not presented to him at the time of the sale of his shares is crucial to the 10b-5 claim.  The court notes that discovery would certainly be easier if Mr. Pelfrey was a party to the case and asserting the claim on his own behalf.  It is unclear how much trouble Defendants will have in obtaining testimony or documents from Mr. Pelfrey.  It is clear however that they potentially face some and perhaps substantial difficulties if Mr. Pelfrey is not cooperative with their discovery efforts.  Further, although Plaintiffs have not stated conclusively whether Mr. Dobyns will testify regarding the actions underlying this claim, counsel for Plaintiffs at oral argument indicated that Mr. Dobyns may testify.  The court finds it likely that Mr. Dobyns will offer testimony regarding the general operation of the corporation and shareholder communication.  Information provided to shareholders will be crucial to determining whether or not Mr. Pelfrey had notice of the independent valuation of the corporation and Mr. Dobyns' shares.

This case falls, with respect to relevant testimony, between the two extremes of *Farey-Jones*, where the person testifying regarding the alleged fraud would be the same

regardless of the assignment and *Smith*, where the assignee would need to rely heavily on his own self-serving testimony to prove the case. Here, the case will turn largely on the testimony of a non-party and Mr. Dobyns' self-serving testimony. The court finds that the evidentiary problems associated with this case are of the type that the Supreme Court sought to avoid in *Blue Chip*.

In addition to the suspicious timing of the assignment and the evidentiary problems, the court is influenced by the fact that the only cases allowing the express assignment of 10b-5 claims had very unique factual situations that are not present here. The strong connection between the assignor and assignee that was present in *Farey-Jones* is not present in this case. The facts of this case are also clearly different than the facts in *AmeriFirst* where the assignment was pursuant to a court approved settlement agreement and the plaintiff was asserting only a portion of the allegedly injured parties' claims. The court finds that Mr. Pelfrey's assignment, under these circumstances, is not sufficient to allow Mr. Dobyns to bring a 10b-5 claim against the Trauter Defendants. Accordingly, the court dismisses the 10b-5 claim as Mr. Dobyns lacks standing to assert it.

**C.    Remaining State Law Claims**

The remaining claims against the Trauter and MSC Defendants are grounded in state law. The court declines to exercise supplemental jurisdiction over the state-law claims and dismisses them without prejudice. *See* 28 U.S.C. § 1367(c).

### III.  CONCLUSION

For the foregoing reasons the court finds that the assignment of Mr. Pelfrey's 10b-5 claim to Mr. Dobyns is not sufficient to allow Mr. Dobyns to bring a 10b-5 claim against the Trauter Defendants; grants the Trauter Defendants' motion to dismiss (Dkt. # 9) the 10b-5 claim because Mr. Dobyns lacks standing to assert it; declines to exercise supplemental jurisdiction over the remaining state law claims; dismisses the remaining

ORDER – 12

1  state law claims against the Trauter and MSC Defendants without prejudice; and strikes
2  as moot the MSC Defendants' motion to dismiss (Dkt. # 13).

DATED this 2nd day of April, 2008.

JAMES L. ROBART
United States District Judge

ORDER – 13